UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

FULLER LANDAU ADVISORY
SERVICES INC.,
                            Plaintiff,

                    -v-

GERBER FINANCE INC.,
                            Defendant.

17-CV-6027 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

      Plaintiff Fuller Landau Advisory Services Inc. brings this action against Defendant Gerber Finance Inc. for breach of contract, breach of the implied covenant of good faith and fair dealing, and an accounting. Defendant moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and the Court converted that motion under Federal Rule of Civil Procedure 12(d) into one for summary judgment. For the reasons that follow, Defendant's motion for summary judgment is granted in part.

**I.    Background**[1]

      Plaintiff Fuller Landau Advisory Services Inc. ("Fuller") provides, among other things, investment banking advisory services relating to corporate transactions. (Dkt. No. 1 ("Compl.") ¶ 7.) Defendant Gerber Finance Inc. ("Gerber") is a financial services firm. (Compl. ¶ 8.) During the relevant time period, Gerber was owned by five shareholders: Investec 1 Limited,

---

[1] Ordinarily, on a motion to dismiss, the Court would take as true the facts set forth in the Complaint. Here, because the Court is converting Defendant's motion into one for summary judgment, the Court also relies on additional evidence submitted by the parties in connection with Defendant's motion. Unless otherwise noted, these facts are not subject to a genuine dispute.

1

Juge Holdings Inc., Catnap Properties Inc., Justin Wessels, and Gerald Joseph, who also served as Gerber's Chief Executive Officer. (Compl. ¶¶ 10−11.)

Gerber's shareholders wanted to sell the company, and around June 2016, Gerber retained Fuller to provide financial advisory services in connection with Gerber's potential sale. (Dkt. No. 21, Ex. 1 ("Fee Agreement") at 1; Compl. ¶ 12.) The parties agreed that if Gerber sold its business, Gerber would compensate Fuller for its services by paying a "Success Fee." (Fee Agreement ¶ 6.) The Success Fee would be equal to 2% of the "minimum value"[2] of the "Transaction Amount" plus 1% of any Transaction Amount above the minimum value. (*Id.*) In relevant part, the Fee Agreement defines the Transaction Amount as follows:

> [T]he aggregate value of all voting and non-voting common equity of the Company, calculated on a fully diluted basis and based upon the purchase price at which the Transaction takes place, plus the aggregate amount of: (i) any indebtedness, preferred shares and other securities outstanding at the time of the Transaction assumed by the buyer . . . .

(Fee Agreement ¶ 7.)

Pursuant to the Fee Agreement, Fuller introduced a potential buyer, Trade Finance Solutions (TFS Canada Bond Series, Inc.) ("TFS" or "Buyer"), to Gerber. (Compl. ¶ 28.) In January 2017, Global Fund Holdings Corp., an affiliate of TFS, purchased all of the outstanding shares of Gerber stock form the former shareholders. (Compl. ¶ 30; Dkt. No. 26, Ex. B at 1.)

Prior to the sale, Gerber owed a debt to a syndicate of lenders led by Bank of America/Merrill Lynch ("the Lenders"). (Compl. ¶ 15; Dkt. No. 21, Ex. 2 at 1.) Gerber's credit

---

[2] The "minimum value" is a target value for the sale set forth in the Fee Agreement. The Court previously granted Gerber's request to redact the dollar value of the minimum value of the company. (Dkt. No. 18.). *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

agreement with the Lenders had a "change of control" clause, under which a sale of 51% or more of Gerber's stock would trigger a default. (Dkt. No. 21 ¶ 13; Dkt. No. 21, Ex. 2 at 4, 60.)

Plaintiff alleges that when TFS purchased Gerber, TFS also convinced the Lenders to allow the change in control to occur without triggering a default of Gerber's loan obligations. (Compl. ¶ 30.) According to Plaintiff, the Lenders agreed to waive enforcement of the change-in-control clause because all of Gerber's outstanding indebtedness to the Lenders "was assumed by and transferred to" TFS and its affiliates. (Compl. ¶ 31.) The parties dispute whether TFS actually "assumed" Gerber's indebtedness to the Lenders.

It is undisputed, however, that TFS's affiliate entered into a limited guaranty with Bank of America (on behalf of all of the Lenders). (Dkt. No. 21, Ex. 4 at 1.) According to Plaintiff, TFS "guaranteed to the Lenders the due and timely payment" of Gerber's indebtedness as of the closing date of Gerber's sale. (Dkt. No. 21 ¶ 20.) As collateral securing its guaranty, TFS granted the Lenders a security interest in all of the Gerber shares it acquired. (*Id.*; Dkt. No. 21, Ex. 5.) Plaintiffs also contend that TFS "became a party to various agreements" with the Lenders "pursuant to an amendment to [Gerber's] credit agreement." (Dkt. No. 22 at 3.)

After the TFS purchase, Gerber paid Fuller a Success Fee based on the purchase price of the shares. (Compl. ¶ 35.) Fuller contends, however, that it is also entitled to a Success Fee based on the value of the debt that Gerber owed to the Lenders at the time of the TFS purchase. (Compl. ¶¶ 33, 35, 37.) Gerber has refused to pay a Success Fee based on that debt. (Compl. ¶ 36.) Gerber has also allegedly refused to provide Fuller with relevant information and documents relating to TFS's guaranty agreement with the Lenders. (Compl. ¶ 38.)

In August 2017, Fuller brought this suit against Gerber for breach of contract, breach of the implied covenant of good faith and fair dealing, and an accounting. (Compl. ¶¶ 40−60.)

Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 15.) In its opposition brief, Plaintiff argued that because Defendant's motion relied on matters outside the pleadings, the motion should be converted into a motion for summary judgment pursuant to Rule 12(d). (Dkt. No. 22 at 12−14.) On May 15, 2018, the Court gave the parties notice that the motion would be treated as one for summary judgment under Rule 56 and permitted the parties an opportunity to file any relevant supplementary materials. (Dkt. No. 28.)

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014) (citing Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 250–51). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64

F.3d 77, 79 (2d Cir. 1995) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

## III. Discussion

Plaintiff alleges three causes of action: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) equitable accounting. The Court addresses each in turn.

### A. Breach of Contract

Under New York law,[3] the elements of a breach of contract claim are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

The parties' dispute centers on the third element: whether Defendant breached the Fee Agreement by failing to include the value of its outstanding bank debt to the Lenders in the Success Fee it paid to Fuller. Under the Fee Agreement, Gerber was obligated to include the debt only if it was part of the "Transaction Amount," which is defined to include "any indebtedness, preferred shares and other securities outstanding at the time of the Transaction assumed by the buyer." (Fee Agreement ¶ 7.) Therefore, the core issue can be framed even more specifically: Did TFS assume any indebtedness when it bought Gerber?

As a threshold matter, the Court must determine whether the phrase "any indebtedness . . . assumed by the buyer" is ambiguous. *See, e.g.*, *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 177−78; *see also JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) ("[T]he

---

[3] The fact that "the parties agree that New York law controls . . . is sufficient to establish choice of law." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

5

question of whether a written contract is ambiguous is a question of law for the court."). A contract term is unambiguous "if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *JA Apparel Corp.*, 568 F.3d at 396 (alteration in original) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)). In contrast, an ambiguous contract term is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 396–97 (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000)).

To determine whether a contract term is ambiguous, courts "look[] within the four corners of the document [and] not to outside sources." *Id.* at 396 (quoting *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998)); *see also W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *JA Apparel Corp.*, 568 F.3d at 396 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).

"If the contract is unambiguous, its meaning is . . . a question of law for the court to decide." *JA Apparel Corp.*, 568 F.3d at 397. In interpreting the contract, the court should "consider its 'particular words . . . in the light of the obligation as a whole and the intention of the parties as manifested thereby'" and without reference to extrinsic evidence of the parties' intent. *Id.* (brackets omitted) (quoting *Kass*, 91 N.Y.2d at 566).

Turning to the parties' Fee Agreement, the Court concludes that the term "indebtedness . . . assumed by the buyer" has an unambiguous meaning. The two key words, "indebtedness" and "assumed," each have a definite and precise meaning when considered in the context of the entire agreement and the usages and terminology of the trade. First, "indebtedness" simply means "[t]he quality, state, or condition of owing money." *Indebtedness*, Black's Law Dictionary (10th ed. 2014). Similarly, in the specific context of transactions involving indebtedness, "assume" also has a definite and precise meaning: to "tak[e] (esp. someone else's debt or other obligation) for or on oneself." *Assumption*, Black's Law Dictionary (10th ed. 2014). In other words, when a party "assumes" the "indebtedness" of another, he becomes directly liable for the debt himself. *Cf. In re Novon Int'l, Inc.*, No. 98 Civ. 677, 2000 WL 432848, at *3 (W.D.N.Y. Mar. 31, 2000) (explaining that "to assume [a] license agreement" is to "to step into [the licensor's] shoes").

Having resolved the threshold question of ambiguity, the Court must now apply the contractual language to answer the legal question of whether the Buyer assumed any of Gerber's indebtedness. Plaintiff alleges that "all outstanding indebtedness owed by Gerber to the Lenders . . . was assumed by and transferred to the Buyer and to [its] affiliates." (Compl. ¶ 31.) The undisputed facts, however, reveal that these allegations are based on a faulty legal premise.

According to an affidavit from Plaintiff's managing director, in the course of purchasing Gerber, the Buyer entered into a guaranty with Lenders which guaranteed timely payment of all debt outstanding at the time of the sale. (Dkt. No. 21 ¶ 20.) The Buyer secured this guaranty by granting the Lenders a security interest in all of Buyer's Gerber shares and subordinating Gerber's other indebtedness to its debt to Lenders. (*Id.*) In the operative provision of the guaranty, the Buyer guaranteed "punctual payment" of any indebtedness owed by Gerber to

7

Lenders under their credit agreement. (Dkt. No. 21, Ex. 4 § 1.) Notably, the stock purchase agreement between Gerber and the Buyer does not mention Gerber's indebtedness to the Lenders. (*See* Dkt. No. 26, Ex. B.) Therefore, as stated by Bank of America's principal loan officer for the Gerber loan, and consistent with New York law and common law,[4] "[t]he obligation to repay the Loan remained with and continues to remain with Gerber and its subsidiary." (Dkt. No. 29 ¶ 9.)

To the extent that Plaintiff contends that the Buyer assumed Gerber's indebtedness when it "guaranteed payment of the . . . debt to the lenders" (Dkt. No. 22 at 3), that argument fails as a matter of law. Simply put, a guaranty does not constitute an assumption of debt. Under New York law, a guarantee is "an agreement to pay a debt owed by another which creates a secondary liability and thus is collateral to the contractual obligation. The principal debtor is not a party to the guaranty and the guarantor is not a party to the principal obligation." *Shire Realty Corp. v. Schorr*, 390 N.Y.S.2d 622, 625 (App. Div. 2d Dep't 1977); *see also N.Y.C. Dep't of Fin. v. Twin Rivers, Inc.*, 920 F. Supp. 50, 52 (S.D.N.Y. 1996) ("A guaranty is a collateral promise to answer for the payment of a debt or obligation of another, in the event the first person liable to pay or perform the obligation fails."). Where, as here, parties execute a guarantee of payment rather than of collection (*see* Dkt. No. 21, Ex. 4 § 1), the "guarantor . . . undertakes an unconditional guaranty that the debtor will pay on the debt. If for some reason, the debtor fails to make

---

[4] "Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." *Xue Ming Wang v. Abumi Sushi Inc.*, 262 F. Supp. 3d 81, 87 (S.D.N.Y. 2017) (quoting *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006)). "New York recognizes four common-law exceptions" to that rule: "(1) a buyer who formally assumes a seller's debts; (2) transactions undertaken to defraud creditors; (3) a buyer who de facto merged with a seller; and (4) a buyer that is a mere continuation of a seller." *Id.* (quoting *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003)).

payment to the creditor, he can proceed directly against the guarantor." *N.Y.C. Dep't of Fin.*, 920 F. Supp. at 53. Nonetheless, unlike an assumption of debt, under which a party steps into the shoes of the debtor and takes on his liability directly, a guaranty of payment does not make the guarantor liable unless a triggering event occurs (i.e., the primary debtor fails to timely pay).

Because Buyer's guaranty of Gerber's debt did not constitute an assumption of debt under the contract as a matter of law, the Court grants Defendant summary judgment on that issue: Defendant did not breach the Fee Agreement by failing to pay Plaintiff a Success Fee based on the value of the guaranteed indebtedness.

Upon receiving notice of the Court's intention to construe Defendant's motion as one for summary judgment, Plaintiff also requested that the Court defer ruling on the motion in order to allow Plaintiff time to conduct targeted discovery pursuant to Federal Rule of Civil Procedure 56(d). Rule 56(d) requires the non-movant to identify the specific areas of discovery that it needs to respond to the movant's factual representations. *See Campbell v. Chadbourne & Parke LLP*, No. 16 Civ. 6832, 2017 WL 2589389, at *3 (S.D.N.Y. June 14, 2017). Here, Plaintiff claims that it needs discovery to determine "the amounts of indebtedness as of the date of the closing which were assumed and/or paid-off by the Buyer; and Gerber's and Buyer's agreements and understandings with the Lenders who consented to the transaction based on the Buyer's assumption of the bank debt." (Dkt. No. 31-1 ¶ 3.) Although the Court rejects Plaintiff's original theory of liability based on the guaranty, it is conceivable that Gerber or a third party possesses evidence demonstrating that the Buyer otherwise agreed to directly pay the debt (i.e.,

9

assumed the debt).[5] Therefore, the Court will permit targeted discovery on whether the Buyer assumed any debt.[6]

To the extent that Plaintiff argues the Buyer assumed Gerber's debts *beyond* the guaranty agreement, summary judgment is denied, without prejudice to renewal following targeted discovery under Rule 56(d).

B. **Breach of Implied Covenant of Good Faith and Fair Dealing**

Under New York law, all contracts contain an implied covenant of good faith and fair dealing, which encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (quoting *Rowe v Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978)). This implied covenant includes a "pledge that 'neither party shall do anything which will have

---

[5] Plaintiff's managing director also avers, apparently for the first time, that the Buyer paid off "other loans and indebtedness of Gerber" which were not covered by the guarantee. (Dkt. No. 31-1 ¶ 5.) In this same declaration, Plaintiff argues that Defendant "also wrongfully refused to pay Fuller's commission under the Agreement" based on these facts. (*Id.*) On this basis, Plaintiff shall be permitted targeted discovery on whether the Buyer assumed any debts of Gerber's.

Plaintiff further contends that the Buyer "became a party to various agreements" with the Lenders "pursuant to an amendment to [Gerber's] credit agreement." (Dkt. No. 22 at 3.) At this point, Plaintiff has provided no evidence to support this contention. The Court reserves judgment on the question whether it would constitute an assumption of debt if Plaintiff can establish after discovery that the Buyer actually became a party to a credit agreement, rather than just the guaranty agreement, with Lenders.

[6] In addition to its argument about what it means to "assume" indebtedness, Defendant also argues that Gerber's debts to the Lenders do not constitute "indebtedness" under the unambiguous meaning of that contractual term. (Dkt. No. 17 at 13−15.) Contrary to Defendant's argument, and as explained above, indebtedness is a broad term meaning simply "debt owed" and is not limited to debts "akin to securities, like notes, bonds or debentures." (Dkt. No. 17 at 13.) The Court will not give the term "indebtedness" the unnaturally narrow reading suggested by Defendant based on the fact that "indebtedness" appears adjacent to the terms "preferred shares" and "other securities outstanding" in the Fee Agreement. (*See id.*)

the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id.* (quoting *Kirke La Shelle Co. v Armstrong Co.*, 263 N.Y. 79, 87 (1933)).

"A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract.'" *Deer Park Enters., LLC v. Ail Sys., Inc.*, 870 N.Y.S.2d 89, 90 (App. Div. 2d Dep't 2008) (quoting *Canstar v Jones Constr. Co.*, 622 N.Y.S.2d 730, 731 (App. Div. 1st Dep't 1995)). Here, Plaintiff alleges that Defendant has breached its duty of good faith and fair dealing "[b]y failing and refusing to pay amounts of Success Fee due to Plaintiff attributable to the Transferred Indebtedness." (Compl. ¶ 51.) Because "the conduct and resulting injury alleged" in the second cause of action for breach of the covenant of good faith and fair dealing "are identical to those alleged in the first . . . cause[] of action alleging breach of contract," the second cause of action must be dismissed as duplicative. *Deer Park Enters.*, 870 N.Y.S.2d at 90.[7]

### C. Equitable Accounting

Plaintiff's third cause of action seeks an accounting concerning any indebtedness transferred to the Buyer. (Compl. ¶¶ 54–60.) "Under New York law, there are four elements to a claim for equitable accounting: '(1) a fiduciary relationship (2) entrustment of money or property (3) no other remedy and (4) a demand and refusal of an accounting.'" *Romain v.*

---

[7] In opposition to Defendant's motion to dismiss, Plaintiff argues that Defendant also breached the duty of good faith and fair dealing by failing "to provide sufficient evidentiary information concerning the Transaction." (Dkt. No. 22 at 11.) This refashioned theory is insufficient to save Plaintiff's second cause of action from dismissal. Not only does this theory depart from the allegations in the Complaint, but also Plaintiff will presumably be able to obtain any relevant evidence through the targeted discovery discussed above. *See, e.g.*, *Sirico v. F.G.G. Prods., Inc.*, 896 N.Y.S.2d 61, 66 (App. Div. 1st Dep't 2010) (noting that a plaintiff may be able to obtain accounting information through discovery, even if its claim for equitable accounting fails).

*Seabrook*, No. 16 Civ. 8470, 2017 WL 6453326, at *6 n.8 (S.D.N.Y. Dec. 15, 2017) (quoting *In re Guardianship of Kent*, 729 N.Y.S.2d 352, 353 (N.Y. Sup. Ct. 2001)); *see also Soley v. Wasserman*, No. 08 Civ. 9262, 2013 WL 6388401, at *5 (S.D.N.Y. Dec. 6, 2013)).

Defendant contends that Plaintiff's claim for an accounting must be dismissed for failure to allege a fiduciary relationship between the parties. (Dkt. No. 17 at 17.) Plaintiff does not meaningfully respond to this argument, nor does it otherwise identify any fiduciary relationship. Accordingly, Plaintiff's claim for an accounting must be dismissed as a matter of law. *See Sirico*, 896 N.Y.S.2d at 66 (holding that "Plaintiffs lack the requisite fiduciary relationship with [Defendant] that is a predicate to an equitable claim for an accounting" and therefore dismissal of that claim was proper).

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED IN PART. Plaintiff's claims for breach of the duty of good faith and for an equitable accounting are dismissed. With respect to Plaintiff's claim for breach of contract, summary judgment for Defendant is granted in part and denied in part.

Within three weeks of the date of this order, the parties shall jointly submit a proposed schedule for targeted Rule 56(d) discovery on Plaintiff's breach of contract claim.

The Clerk of Court is directed to close the motion at Docket Number 15.

SO ORDERED.

Dated: August 7, 2018
      New York, New York

_____
J. PAUL OETKEN
United States District Judge